# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KAREN BRANDEWIE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 05-625-MPT |
| | : | |
| STATE OF DELAWARE | : | |
| DEPARTMENT OF CORRECTION, | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT'S OPENING BRIEF IN SUPPORT

## OF ITS MOTION FOR SUMMARY JUDGMENT

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/ Marc P. Niedzielski
Marc P. Niedzielski (#2616)
Ralph K. Durstein, III (#912)
Deputy Attorneys General
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8324
Attorneys for Defendant

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................3

NATURE AND STAGE OF PROCEEDINGS ....................................................................4

SUMMARY OF THE ARGUMENT ....................................................................................5

STATEMENT OF THE FACTS ...........................................................................................6

### ARGUMENT I.

DEFENDANT IS ENTITLED TO JUDGMENT IN ITS FAVOR AS PLAINTIFF DID NOT PROPERLY EXHAUST HER ADMINISTRATIVE REMEDIES AS REQUIRED TO COMMENCE A TITLE VII ACTION ..........................................................................................10

### ARGUMENT II.

DEFENDANT IS ENTITLED TO JUDGMENT AS CO-WORKER RUMORS ABOUT NON-EMPLOYMENT MATTERS THAT ARE NOT CAUSED BY THE EMPLOYER DO NOT STATE A TITLE VII ACTION AND IN ANY EVENT THE EMPLOYER EFFECTED PROMPT REMEDIAL ACTION TO ADDDRESS PLAINTIFF'S CONCERNS. .........................................................................................................13

### ARGUMENT III.

PLAINTIFF IS NOT ENTITLED TO ANY DAMAGES AFTER SHE WAS OFFERED ANY SIMILAR OPEN POSITION AT ANY LOCATION AND THE UNACCEPTED OFFER DEMONSTRATES THAT SUBJECTIVELY AND OBJECTIVELY SHE IS NOT IN A HOSTILE WORK ENVIRONMENT. ..................................................................15

CONCLUSION .....................................................................................................................17

## TABLE OF AUTHORITIES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..............................................10

*Birone v. Indian River School*, 145 F.3rd 1329,
1998 WL 199791 (6th Cir. 1998)..................................................................................13

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .........................................................10

*Ford Motor Co. v. EEOC,* 458 U.S. 219 (1982) .......................................................15

*Hampton v. Borough of Tinton Falls Police Dept.*,
98 F.3d 107 (3d Cir. 1996) .........................................................................................11

*Harris v. Forklift Sys. Inc.*, 510 US 17 (1993) ..........................................................16

*Knabe v. Boury*, 114 F.3rd 407 (3rd Cir 1997) .................................................13,14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ...................................................................................................11

*National Railroad Passenger Corporation v. Morgan*,
536 U.S. 101, 110 (2002) ...........................................................................................12

*Spain v. Gallegos*, 26 F.3RD 439 (3rd 1994) .............................................................13

### Other authorities

42 U.S.C. § 2000e-5(e)(1) ..........................................................................................12

Fed. R. Civ. P. 56(c) ..................................................................................................10

## **NATURE AND STAGE OF PROCEEDINGS**

On August 25, 2005, plaintiff commenced this Title VII action contending that she had been subject to sexual and racial hostile work environment.

On September 19, 2005, the defendant Department of Correction answered the complaint by denying any wrongdoing and asserting a number of defenses.

On November 2, 2005, the Court entered an order where the parties consented to having the matter heard before the U.S. Magistrate Judge.

On November 30, 2005, the Court entered a scheduling order.

On June 19, 2006, the Court extended the time for discovery as requested by plaintiff and consented to by defendant.

On September 15, 2006, defendant filed and served a motion for summary judgment and this is the accompanying Opening Brief in Support of Summary Judgment.

## **SUMMARY OF THE ARGUMENT**

### **I.**

Plaintiff failed to bring her charge of discrimination within 300 days of the incident and therefore failed to properly exhaust her administrative remedies prior to bringing suit.

### **II.**

Coworker rumors about non-employment matters are simply idle gossip that does not state a Title VII claim, and in any event, the employer took prompt and remedial action to respond to plaintiff's concerns.

### **III.**

Plaintiff is precluded from recovering any economic damages as she was unconditionally offered any open position in her grade at any Department facility and the unaccepted offer establishes that both subjectively and objectively she is not in a hostile work environment.

**STATEMENT OF THE FACTS**

On November 30, 2000, plaintiff then known as Karen Atwell began Correctional Officer Training Academy as a Cadet with the Delaware Department of Correction. On January 27, 2001, plaintiff successfully completed training and was sworn in as a Correctional Officer and was transferred to the Delaware Correctional Center ["DCC"] at Smyrna, Delaware. (Declaration of John Smart)

On November 24, 2002, plaintiff requested and was selected for transfer to the Sussex Correctional Institute ["SCI"] in Georgetown, Delaware. (Declaration of John Smart)

On February 5, 2003, plaintiff received an e-mail from another Correctional Officer that states:

> "I heard just before or during your marriage that you were sleeping with this black guy and when you told this guy you would leave your husband to live with this guy that he said he didn't want a relationship he just wanted to have sex with you and you got mad and slapped him. Then I heard you were caught in a vehicle with this same black guy or some other black guy. But anyway they told me the reason you wouldn't do anything with me or anyone else around here was because you liked black guys and not white guys even through you are married to one NOW." (Brandewie Ex.1)

Following her receipt of the February 5, 2003 e-mail, plaintiff showed the same to Deputy Warden Mike DeLoy and requested that Whitman stop, but did not want the C.O. to get into any trouble. (Brandewie Tr. 70, l.22 – P.73. l.10 ) In fact, the offending C.O. was counseled regarding the matter on February 22, 2003

(D02653) and according to plaintiff, C.O. Whitman had no further contact with her. (Brandewie Tr. 72, l.20 – p.73, l.10 )

On July 20, 2003, plaintiff began sick leave under the FMLA for her daughter's mood disorder and returned to work at SCI on August 5, 2003. (Declaration of John Smart)

On August 31, 2003, plaintiff's spouse, a Georgetown Police Officer was arrested for allegedly molesting plaintiff's daughter. *Id.*

On November 3, 2003, plaintiff sent an e-mail to Warden Rick Kearney that there are rumors that she is feature in a "porn site" as a "white married female looking for black male with big dick…" (Brandewie Ex. 2, D00003)

On November 6, 2003, the Warden met with the plaintiff, a COAD representative and another individual. After interviewing plaintiff, Kearney sent a memo outlining the complaint, the meeting and his initiation of an Internal Affairs ["IA"] inquiry into the matter. (Brandewie Ex. 2, D00001-00002) Thereafter IA interviewed a number of correctional officers regarding accessing the sites and from where the rumors first started. During the investigation, the Department of Technology and Information ["DTI"] was contacted and they blocked State access to the site. Additionally, Lieutenants and Captains at SCI spoke to the staff to reiterate the State's Acceptable Computer Use Policy. (Brandewie Ex. 2, D00021-00025)

On January 11, 2004, plaintiff began a period of leave for what her healthcare provider called anxiety-post traumatic stress disorder. (Declaration of John Smart)

On January 25, 2004, IA completed its investigation and concluded that some unknown Correctional Officers had in violation of the State's Computer Use policy access the Yahoo personal profile and that rumors had circulated that it was plaintiff that was depicted on the site. (Brandewie Ex. 2, D00021-00025)

On February 25, 2004, plaintiff sent Human Resources of the Department a letter from her therapist diagnosing plaintiff as suffering from anxiety due to hostile work environment and recommending she temporarily work at another Department location. (Declaration of John Smart)

On February 26, 2004, plaintiff was assigned with her consent to the Employee Development Center ["EDC"] which is a non-custodial training and administration facility in Dover where she performed light duty clerical work. (Declaration of John Smart)

On March 1, 2004, plaintiff returned to work from leave at the EDC. *Id.*

On September 20, 2004, plaintiff was transferred, again at her therapist's recommendation, to a half-way house facility called the Morris Correctional Center ["MCC"] in Dover as a Correctional Officer. *Id.*

On August 5, 2005, plaintiff took medical leave for surgery. *Id.*

On September 22, 2005, plaintiff retuned to work from medical leave at MCC where she remains today. *Id.*

- 8 -

On September 27, 2005, plaintiff, through counsel, was offered any open position at her present pay grade within the Department at any facility. (Brandewie Ex. 3) Plaintiff's counsel responded on November 7, 2005, by inquiring as to current openings. (Brandewie Ex. 4.) Plaintiff's counsel was provided a memorandum from Alan Machtinger outlining the numerous employment positions available. (Brandewie Ex. 5)  Plaintiff has not requested a transfer from her present work location at MCC in Dover.

### ARGUMENT I.

DEFENDANT IS ENTITLED TO JUDGMENT IN ITS FAVOR AS PLAINTIFF DID NOT PROPERLY EXHAUST HER ADMINISTRATIVE REMEDIES AS REQUIRED TO COMMENCE A TITLE VII ACTION.

**(a)   Introduction:**

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact is one that "may reasonably be resolved in favor of either Party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 259 (1986). The moving party bears the initial burden of demonstrating the absence of material issues of fact. *Celotex Corp.*, at 323. However, the moving party need not support its motion with affidavits or other documents disproving the nonmoving party's claim, but need only "show - - that is point out to the district court - - that there is an absence of evidence to support the nonmoving party's case." *Id.*, at 325. The nonmoving party must go beyond the pleadings and through affidavits or other evidence demonstrate the existence of a genuine issue of material fact. *Id.*, at 314. The district court is

required to construe the evidentiary record so as to give the nonmoving party reasonable factual inferences. *Hampton v. Borough of Tinton Falls Police Dept.*, 98 F.3d 107, 112 (3d Cir. 1996). Summary judgment should be granted if the court finds, in consideration of all of the evidence, that no reasonable trier of fact could find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

For the reasons that follow, the defendant is entitled to judgment as a matter of law as plaintiff has failed to properly exhaust her administrative remedies in a timely fashion under Title VII.

### (b)     Failure to exhaust administrative remedies

On January 6, 2004, plaintiff under her prior name of Atwell filed a charge of discrimination with the Delaware Department of Labor and the EEOC. (Brandewie Ex. 2, D00006).  In the charge, plaintiff contends that Correctional Officer Leonard Whitman made statements to her that plaintiff had sexual relations with black men, but she would not have sex with Whitman. She continues in her charge by indicating that a month (by March 5, 2003) later rumors started about plaintiff appearing naked on an internet site. In her deposition, plaintiff testified that the second paragraph refers to an e-mail to her dated February 5, 2003, from C/O Whitman which was after Whitman's prior requests for sexual favors. (Brandewie Deposition Ex. 1; Tr. p. 82-83)   In fact, plaintiff concedes that she could have been first advised about the 'internet photo' in

December 2002 by another Correctional Officer James Henry. (Brandewie Tr. 107, l. 17 – 108, l. 3)

Title VII requires that plaintiffs "shall" file an employment discrimination charge with the Equal Employment Opportunity Commission (EEOC) within 300 days after an "alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 110 (2002). It is undisputed that plaintiff received the e-mail that underlines her charge of discrimination on February 5, 2003 which is beyond the 300 day limit as to when she filed the January 6, 2004 charge of discrimination. It is clear that plaintiff's claim under Title VII, if any, accrued on February 5, 2003, when plaintiff received the offending e-mail.

Accordingly, the record is undisputed that plaintiff did not bring her discrimination charge to the EEOC within the required 300 days and she failed to properly exhaust the required administrative procedures under § 2000e-5.

Accordingly, defendant is entitled to judgment as plaintiff did not properly exhaust her administrative remedies.

## ARGUMENT II.

DEFENDANT IS ENTITLED TO JUDGMENT AS CO-WORKER RUMORS ABOUT NON-EMPLOYMENT MATTERS THAT ARE NOT CAUSED BY THE EMPLOYER DO NOT STATE A TITLE VII ACTION AND IN ANY EVENT THE EMPLOYER EFFECTED PROMPT REMEDIAL ACTION TO ADDDRESS PLAINTIFF'S CONCERNS.

The thrust of plaintiff's present complaint[1] seems to be that rumors about her having an internet site that featured her in what she describes as a pornographic pose that she claims were circulated at her prior work location at SCI. Actually, the "site" is a Yahoo personal profile that is in the nature of an e-mail location and the depiction is of a blond-haired scantily dressed woman in a recumbent position. (Brandewie Ex. 2, D00004) Of course, plaintiff denies that she is the individual depicted on the site, but complained to Warden Kearney about the rumors at SCI that it was her site. It is undisputed that her complaint was sent by e-mail dated November 3, 2003. Plaintiff does not suggest that she was denied a promotion or otherwise discriminated against based on sex, gender or race.

However, the simple truth is that employers do not have the ability to stop unwanted rumors. *Birone v. Indian River School*, 145 F.3rd 1329, 1998 WL 199791 at 4, (6th Cir. 1998) citing to *Spain v. Gallegos*, 26 F.3d 439 (3rd 1994). In

---

[1] As set out in the statement of facts and Argument I, the issue regarding the obnoxious February 5, 2003 e-mail was resolved and therefore there is no existing Title VII claim for that incident. "An effective remedy – one that stops the harassment – is adequate per se." *Knabe v. Boury*, 114 F.3rd 407, 411-12 n.8 (3rd Cir 1997).

fact, no one has the ability to stop idle gossip which is the basis of most rumors. Accordingly, there is no Title VII claim as the rumors are in the nature of idle gossip about non-employment matters that were neither started nor maintained by her employer. Moreover, the employer took prompt remedial steps to find who was spreading the rumors, blocked the internet site, advised staff about proper computer use and transferred the plaintiff to two different work locations at her request. *Knabe v. Boury Corp.,* 114 F.3d 407, 412-13 (3rd Cir. 1997) ["Even if not effective, an employer's remedial measure is nevertheless adequate if 'reasonably calculated' to end the harassment. (citations omitted)]

# ARGUMENT III.

PLAINTIFF IS NOT ENTITLED TO ANY DAMAGES AFTER SHE WAS OFFERED ANY SIMILAR OPEN POSITION AT ANY LOCATION AND THE UNACCEPTED OFFER DEMONSTRATE THAT SUBJECTIVELY AND OBJECTIVELY SHE IS NOT IN A HOSTILE WORK ENVIRONMENT.

On September 27, 2005, plaintiff, through counsel, was offered any open position at her present pay grade within the Department at any facility. (Brandewie Ex. 3) Plaintiff's counsel responded on November 7, 2005, by inquiring as to current openings. (Brandewie Ex. 4.) Plaintiff's counsel was provided a memorandum from Alan Machtinger outlining the numerous employment positions available. (Brandewie Ex. 5)

The primary objective of Title VII is to end employment discrimination through cooperation and voluntary compliance. *Ford Motor Co. v. EEOC,* 458 U.S. 219, 228 (1982). That laudable goal was possible in the present matter when on September 27, 2005, the defendant offered the plaintiff employment at any location for any open position at her pay grade. Plaintiff has not followed up with a request for another position and continues to be employed with defendant at the Morris Correctional Center in Dover. Accordingly, defendant's unconditional employment offer ends any potential Title VII liability of defendant beyond September 27, 2005. *Id.* at 241.

In the alternative, plaintiff'S objective contentment with her present employment location[2], where she has been since September 22, 2004, and her failure to accept the unconditional offer to any other location demonstrates that she is neither subjectively nor objectively is subject to a hostile work environment. *See Harris v. Forklift Sys. Inc.*, 510 US 17 (1993).

---

[2] At page 94, Plaintiff testified that as to her present duties at MCC as follows:
   3   Q.  Are you able to perform your job there?
   4   A.  Yes, I am.
   5   Q.  Do you do it well?
   6   A.  Yes, I do. And I ask for backup.
   7   Q.  Do you think you do your job well?
   8   A.  Yes, I do.
   9   Q.  When you were working here [EDC], do you think you
  10  did your job well?
  11   A.  Yes, I did.

## CONCLUSION

For the above reasons, the defendant is entitled to judgment pursuant to Rule 56 as matter of law in the complaint or amended complaint.

                Respectfully submitted,

                STATE OF DELAWARE
                DEPARTMENT OF JUSTICE


                /s/ Marc P. Niedzielski
                Marc P. Niedzielski (#2616)
                Ralph K. Durstein, III (#917)
                Deputy Attorneys General
                820 N. French Street, 6th Floor
                Wilmington, DE 19801
                (302) 577-8324
                Attorneys for Defendant

## CERTIFICATE OF SERVICE

I certify that on September 15, 2006, I served electronically the attached Defendant's Opening Brief in Support of Summary Judgment on the following:

Ronald G. Poliquin, Esquire
Young, Malmberg & Howard
30 The Green
Dover, DE 19901
rpoliquin@youngmalmberg.com


/s/ Marc P. Niedzielski
Marc P. Niedzielski (#2616)
Deputy Attorney General
820 N. French Street, 6th Floor
Wilmington, DE  19801
marc.niedzielski@state.de.us